THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORRAINE NETHERTON,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>JANE PARNELL,<br><br>　　　　　　Respondent. | CASE NO. C13-1281-JCC-MAT<br><br>ORDER |

This matter comes before the Court on the petition of Lorraine Netherton for writ of habeas corpus, challenging her conviction for second degree murder. (Dkt. No. 1.) The Honorable Mary Alice Theiler, Chief United States Magistrate Judge, issued a Report and Recommendation ("R&R") (Dkt. No. 42) advising this Court to deny Netherton's petition. Netherton objects to the R&R. (Dkt. No. 47.)

After reviewing each of Netherton's objections *de novo*, and having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby ADOPTS the R&R and DENIES the writ. However, the Court also finds that reasonable jurists may find four of the Court's decisions debatable, and therefore ISSUES certificates of appealability ("COA") for each of these issues, discussed below.

I.     BACKGROUND

### A. Procedural History

The Court will not recite the detailed procedural history, described in the R&R. (Dkt. No. 42 at 2-9). Upon petitioning this Court for writ of habeas corpus under 28 U.S.C. § 2254 and receiving the R&R, Netherton has raised twenty-four objections.[1] (Dkt. No. 47.)

### B. Relevant Facts

The factual record is laid out clearly in the R&R (Dkt. No. 42 at 2-9). The Court will not rehearse the details here, other than to note that, as the Washington Court of Appeals summarized the case:

> On November [23], 2002, Lorraine Netherton shot and killed Desiree Rants. The underlying circumstances involved a custody dispute between an acquaintance of Netherton's named Gwen Rees, and Desiree Rants' brother, Willie Rants. Netherton pursued Desiree Rants' Kia, in which were riding Willie Rants, his sister Desiree, his daughter [M], and the infant child of a friend. After a high speed chase, Desiree stopped the Kia, and Willie fled with his daughter. As Desiree emerged from the car, Netherton approached and shot her twice. Desiree died at the scene. She was unarmed.
>
> Netherton had apparently never met any of the Rants family members before, except [M's] mother Rees, whom she knew only slightly. She professed to believe Willie Rants had kidnapped [M] to remove her from the custody of Rees.

(Dkt. No. 14, Ex. 2 at 1-2.) Netherton was convicted of second degree murder with use of a deadly weapon on November 7, 2003. (Dkt. 1 at 2.) Where relevant, Netherton's objections to portions of the factual discussion found in the R&R and in earlier decisions are addressed below.

## II. DISCUSSION

### A.   Standard of Review

A district court reviews *de novo* the parts of a Magistrate's report to which any party objects. 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Under the Antiterrorism and

---

[1] There are only twenty-three numbered objections. However, Netherton also objects to the R&R's recommendation that the Court dismiss her claim of prosecutorial misconduct involving the suggestion to the jury that Petitioner had sufficient ammunition to "take out" "three juries." (Dkt. No. 47 at 12).

Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition can only be granted if a state-court adjudication on the merits:

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;
  or
 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under § 2254(d)(1), federal law is "clearly established" only if it is based on a United States Supreme Court holding that governed at the time of the relevant state-court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not enough that the federal court be persuaded that a state-court decision is erroneous. *Id.* at 411. Rather, the appropriate inquiry is whether the state court application of federal law was objectively unreasonable. *Id.* at 409.

Under § 2254(d)(2), a state-court determination of facts is presumed correct unless rebutted by clear and convincing evidence. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (internal citation omitted). AEDPA demands deference to state court findings of fact, subject to a federal court's "real, credible doubts about the veracity of essential evidence and the person who created it." *Hall v. Dir. of Corrections*, 343 F.3d 976, 984 n.8 (9th Cir. 2003).

**B. Evidentiary Hearing**

An evidentiary hearing is appropriate if the habeas petitioner meets two conditions: (1) "He must allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court either at the time of trial or in a collateral proceeding." *Gonzalez v. Pliler*, 341 F.3d 897, 903 (9th Cir. 2003) (internal quotation marks and citation omitted). Netherton has not met these conditions and the Court finds it unnecessary to hold an evidentiary hearing. The R&R is ADOPTED in this respect.

**C. Standard for Certificate of Appealability**

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's

dismissal of her federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

### D.     Objections One and Two: Factual Disputes

In her first Objection, Netherton claims that "the R&R wrongly suggests that the Court resolve the case on the basis of the factual description of the Washington Court of Appeals and the State's Brief on direct appeal rather than Petitioner's allegations" (Dkt. No. 47 at 4) and that the R&R ignores Netherton's Traverse (Dkt. No. 27) "which delineates material facts and evidence that were not made part of the state record because of constitutional error, or which the state courts and prosecutors glossed over."

It is true that the "Background" section of the R&R quotes extensively from the Washington Court of Appeals and the prosecutor's brief in order to provide a description of the events and the evidence at trial. (Dkt. 42 at 2-7.) However, the R&R does not suggest that these are the only materials that merit the Court's consideration. Indeed, throughout the course of the fifty-eight page R&R, the Magistrate Judge took great pains to address each of Netherton's claims, drawing from diverse areas of the record where relevant. Netherton does not point to specific factual allegations in the Traverse that were ignored, and that, if acknowledged, would have changed the recommendation. Nor does the Court's review of the Traverse indicate that any allegations were improperly ignored.

In Objection number 2, Netherton claims that the R&R uncritically accepts the

prosecution's description of witness testimony, ignoring problems with that testimony, and ignoring the implicit rejection of that testimony by the jury when it acquitted Petitioner of first degree murder. Netherton further claims that there is no indication that the Magistrate Judge reviewed the relevant parts of the trial record. (Dkt. No. 47 at 4.) This is incorrect, as the R&R repeatedly cites to the trial record concerning these witnesses. (*See, e.g.*, Dkt. 42 at 26.) More generally, the R&R evidences careful consideration and weighing of witness testimony, belying the claim that the Magistrate Judge uncritically relied upon the prosecution's descriptions of this evidence. (*See, e.g.*, Dkt. No. 42 at 26-27.)

### E.   Objections 3, 21, and 22: Ballistics and Forensic Evidence, and Failure to Disclose Impeachment Evidence

In Objection 3, Netherton argues that the R&R inappropriately credits the prosecution's forensic testimony regarding the location of shells and bullets and test firings of Petitioner's gun while inappropriately discounting evidence impeaching the witnesses who gave this testimony, including Detective Denny Gulla and Evan Thompson, a forensic expert from the Washington State Patrol Crime Laboratory. In Objection 21, Netherton challenges the recommendation that the Court find that Netherton is not entitled to relief based on the prosecution's failure to disclose impeaching evidence regarding Detective Gulla. In Objection 22, Netherton challenges the recommendation that the Court find that Netherton is not entitled to relief based on the prosecution's failure to disclose impeaching evidence regarding Mr. Thompson.

The Court finds that the R&R did not inappropriately credit the prosecution's forensic testimony, so Objection 3 is unavailing. The more specific objections regarding Detective Gulla and Mr. Thompson are addressed below.

Netherton argues that the R&R erred in its assessment of the importance of Detective

ORDER
PAGE - 5

Gulla's testimony and in its acceptance of prosecutors' representations about their knowledge of problems with Detective Gulla's credibility. Netherton also argues that the R&R erred in failing to consider what the police agencies knew about Detective Gulla's credibility at the time of trial.

The R&R correctly points out that "there is no evidence the prosecution possessed and suppressed impeachment evidence associated with Gulla. The newspaper articles relied upon by petitioner (*see* Dkt. 35-3, Ex. P), and addressed by the state court, were published *after* her trial and do not support a failure to disclose in this case." (Dkt. No. 42 at 44-45.) Moreover, even if the prosecution had been in possession of evidence impeaching Detective Gulla's credibility, the R&R is correct in saying that "[g]iven the abundant evidence of petitioner's guilt, it cannot be said that the results of the proceedings would have been different with knowledge" of the evidence Netherton cites to.

For these reasons, the Court finds Objection 21 unavailing. However, neither the state court nor the R&R grapple with the full extent of Detective Gulla's credibility problems. While the *Seattle Post-Intelligencer Reporter* articles about the allegations against Detective Gulla were not published until 2005, they report on events occurring as early as 1988, and they indicate that Detective Gulla was found to have committed conduct unbecoming an officer long before Netherton's trial. (*See* Dkt. No. 35-8 at 8.) Because it appears that official actions were taken against Detective Gulla before Netherton's trial, it is at least plausible to suggest that the prosecution might have had information undermining the Detective's credibility when such information was requested by Netherton's defense. The state court and the R&R are likely correct in concluding that disclosure of such information would not have made a difference in the outcome of the trial. Nevertheless, this is a matter upon which reasonable jurists may disagree.

A reasonable jurist might conclude that Netherton should have been allowed to conduct discovery to determine whether the prosecution failed to disclose evidence impeaching Detective Gulla's credibility. The Court therefore issues a COA permitting Netherton to appeal this issue.

Netherton argues that the R&R erred in asserting that the undisclosed impeachment evidence against Mr. Thompson "did not exist at the time of . . . trial" despite Netherton's proffered "evidence indicating that Mr. Thompson's questionable practices were long known," and despite Netherton's lack of opportunity to conduct discovery necessary to determine what was known to prosecutors or the Washington State Patrol at the time of the trial. (Dkt. No. 47 at 11.)

The only evidence suggesting that the prosecution or Washington State Patrol may have had knowledge of Mr. Thompson's "questionable practices" at the time of the trial is forensic scientist Kay Sweeny's assertion that he knew, in June 2003, that Thompson's "reputation for carefulness and accuracy in forensic examinations [was] open to question." (Dkt. No. 35-3 at 71). The R&R acknowledges this assertion, but notes that it is "of questionable value to petitioner . . . and does not suffice to demonstrate similar knowledge on the part of the prosecution." (Dkt. No. 42 at 47.) This claim is based on a careful examination of Sweeny's report, demonstrating Sweeny's own lack of care and accuracy in assessing Thompson's work. (Dkt. No. 42 at 26-27.) The R&R also notes that the "state court also reasonable found an absence of materiality . . . given the eyewitness testimony and other evidence, there is no reasonable likelihood the introduction of Thompson's alleged 'reputation' in 2003 could have affected the judgment of the jury." (Dkt. No. 42 at 47.)

The Court finds the R&R persuasive on this matter. However, there are a number of issues making this a close call. Specifically: Mr. Thompson testified extensively; his testimony

was used to impeach Netherton's claims of self-defense; the prosecution relied on his testimony in closing arguments; and concerns raised about Mr. Thompson's work in subsequent years (*see* Dkt. No. 35-4—35-6) lend credence to Mr. Sweeny's claims to have known about problems with Mr. Thompson's work at the time of trial. For all of these reasons a reasonable jurist might conclude that Netherton should have been allowed to conduct discovery to determine what the prosecution or the Washington State Patrol knew about Mr. Thompson's work at the time of trial, and to determine whether there was an impermissible failure to disclose evidence impeaching Mr. Thompson's testimony and documenting potentially unreliable methodology. The Court therefore issues a COA permitting Netherton to appeal this issue.

### F.   Objection Four: Denial on the Merits

Netherton objects to the R&R's determination that the Court of Appeals denied Netherton's petition "on the merits." (Dkt. No. 47 at 5.) The Court finds the R&R's analysis of this issue compelling. The objection is therefore unavailing.

### G.   Objection Five: Review Limited to the Record

Netherton objects to the R&R's determination that the court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." (Dkt. No. 47 at 5.) Netherton's objection is based on her contention that the state petition was not heard on the merits. This Court has rejected that contention, above. Netherton correctly points out that the R&R agrees that there was a problem with the state court's consideration of one of her claims. (*See* Dkt. No. 42 at 39.) However, because the R&R considered this claim *de novo*, there was no error.

### H.   Objection Six: State Court Discretion to Dismiss Petition

Netherton objects to the R&R's determination that the state court properly exercised its discretion to dismiss the petition. (Dkt. No. 47 at 5.) The Court finds that the R&R's analysis of this point was accurate.

### I. Objection Seven: Second Amendment

Netherton objects to the R&R's recommendation that the Court find that Petitioner is not entitled to habeas relief based on the alleged violation of her Second Amendment rights. Netherton does not make any new arguments in raising this objection, and the Court agrees with the analysis about this issue in the R&R. (Dkt. No. 42 at 17-21.)

### J. Objection Eight: Excusable Homicide Instruction

Netherton objects to the R&R determination that the question of whether Petitioner was entitled to an excusable homicide instruction is a matter of state law. (Dkt. No. 47 at 6.) The Court finds that the R&R analysis (Dkt. No. 42 at 20) of this point is appropriate, and that, contrary to Netherton's assertion, the R&R did not "ignore" state court findings about carrying firearms for self-defense under the circumstances presented by this case. Instead, this issue is explicitly addressed in the R&R. (Dkt. No. 42 at 20 n.7.)

### K. Objection Nine: Adverse Inferences

Netherton objects to the R&R's determination that it was reasonable for the state courts to hold that "the State may draw adverse inferences from the exercise of a constitutional right if doing so is relevant and the evidence is properly presented." (Dkt. No. 47 at 6; Dkt. 42 at 17). The Court finds the R&R's analysis of this point (Dkt. No. 42 at 19) compelling. The cases cited by Netherton (Dkt. No. 39 at 12) are inapposite.

### L. Objection Ten: Possession of Firearms

Netherton claims that "the R&R wrongly states that Petitioner's possession of firearms

for self-defense was not 'constitutionally protected behavior. . . .'" (Dkt. No. 47 at 6.) In fact, the R&R states only that "the prosecutor [did not] use constitutionally protected behavior *as the basis for criminal punishment*." (Dkt. No. 42 at 21) (emphasis added). The R&R is correct in regards to this point.

### M.   Objections 11-18: Ineffective Assistance of Counsel

In Objection 11, Netherton objects to the R&R recommendation that the Court dismiss her ineffective assistance of counsel claims. (Dkt. No. 47 at 7.) Netherton objects here to page 21-35 of the R&R in one short paragraph. While the Court finds no error in those pages, and consequently finds the objection unavailing, more specific objections are addressed below.

In Objection 12, Netherton challenges the R&R's discussion of the deference due to the state courts, arguing that, because she was unreasonably denied the opportunity to develop or present the facts supporting her ineffective assistance of counsel claim in state court, she should be allowed to develop and present that evidence now. (Dkt. No. 47 at 7.) The Court finds the R&R analysis of the required deference appropriate, and the objection unavailing.

In Objection 13, Netherton objects to the determination in the R&R that the state postconviction judge did not reject the ineffectiveness claim on procedural grounds, but instead ruled on its merits. In fact, the R&R expresses some doubt as to whether the state court deemed the petition procedurally deficient (Dkt. No. 42 at 24), but nevertheless concludes that "the state court clearly and unequivocally concluded petitioner failed to show prejudice resulting from her trial counsel's alleged failings" and that the ruling is entitled to deference. (Dkt. No. 42 at 25.) This is the correct analysis.

In Objection 14, Netherton argues that the R&R inappropriately recommends that the Court give deference to the state court holding that it reasonably rejected the second "prejudice" prong of Netherton's *Strictland* claim, since no deference is due where a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." (Dkt. No. 47 at 8) (citing *Wiggins v. Smith*, 539 U.S. 510, 528 (2003)).

The R&R, however, did not find that the state court decision was based on an unreasonable determination of the facts. Instead, while the R&R acknowledges that Netherton pointed to facts and arguments that could have been established had she been granted a reference hearing, it also raises the possibility that the state court determined that such evidence would not have provided sufficient support for granting the request. (Dkt. No. 42 at 24.) The Court finds this analysis correct.

In Objection 15, Netherton objects to the R&R's determination that defense counsel's failure to obtain expert assistance was harmless. (Dkt. No. 47 at 15.) Netherton claims that, in reaching this determination, the R&R failed to consider much of the evidence provided by the defense and misunderstood the significance of Evan Thompson's testimony. The Court finds no basis for these claims. Instead, the R&R appropriately determined that Netherton failed to demonstrate prejudice resulting from the lack of a defense expert.

In Objection 16, Netherton claims that the R&R ignored defense counsel's failure to photograph Netherton's injuries. (Dkt. No. 47 at 9.) In fact, the R&R addresses this alleged failure explicitly. (Dkt. No. 42 at 27.) The Court finds that the R&R is correct in its assessment that "petitioner fails to demonstrate a reasonable probability that, but for her counsel's failure to obtain additional photographs, witness testimony, or other evidence, the result of the trial would have been different." (Dkt. No. 42 at 29.) This is, however, a close call.

The Court finds noteworthy the fact that defense counsel was initially not permitted to bring a camera into the jail to photograph Netherton's injuries, and that he had "no tactical reason" for failing to photograph her injuries, including her "very noticeable black eye" when she came to court. (Dkt. No. 35-3 at 26.) Moreover, because there was conflicting evidence about the extent of Netherton's injuries, because photographic evidence might have swayed jurors' assessment about how to weigh this evidence, and because this issue goes to the heart of Netherton's self-defense claim, the question of prejudice resulting from the failure to photograph Netherton's injuries is a matter about which reasonable jurists might disagree. The Court

therefore issues a COA permitting Netherton to appeal the issue of whether the failure to obtain photographs of her injuries constitutes ineffective assistance of counsel.

Objection 17 incorrectly states that the R&R "simply assumes the truth of the prosecution testimony that Petitioner's proffered photographic evidence seeks to refute." (Dkt. No. 47 at 9.) The Court finds no evidence of such an assumption.

In Objection 18, Netherton argues that it was error for the R&R to find "no prejudice from the failure of trial counsel or the prosecutor to convey accurate information to the jury regarding Desiree Rants' criminal history." (Dkt. No. 47 at 9.) The Court finds that the analysis of this issue in the R&R (Dkt. No. 42 at 42-44) is correct, and that the objection is therefore unavailing.

### N.   Objections 19 and 20: *Brady/Napue* Claims

In Objection 19, Netherton argues that the R&R wrongly recommends dismissal of several grounds in the petition pertaining to the failure to disclose exculpatory evidence and misleading representations to the jury. (Dkt. No. 47 at 10.) The Objection raises no new arguments about these issues. The Court accepts the analysis in the R&R and finds the objection unavailing.

In Objection 20, Netherton objects to the R&R's conclusions about the information presented to the jury about Desiree Rants. As part of this objection, Netherton claims that the R&R "ignores" the prosecutor's "misleading" portrayal of Ms. Rants. (Dkt. No. 47 at 10.) The Court finds no evidence that the Magistrate judge did not consider the prosecutor's portrayal of Ms. Rants, and accepts the analysis in the R&R about this issue. (Dkt. No. 42 at 39-43.) The objection is unavailing.

### M.   Objection 23: Vindictive Prosecution

Netherton objects to the R&R's recommended dismissal of Petitioner's vindictive prosecution claim, arguing that there was no probable cause for the drive-by shooting charge. (Dkt. No. 47 at 12.) Netherton further argues that she was improperly threatened with the charge,

that it was subsequently filed as retaliation for her refusal to plead guilty, and that the charge was improperly and prejudicially communicated to the jury. The Court accepts the R&R's analysis of this point, and finds the objection unavailing. However, this is a close call.

RCW 9A.36.045(1) defines the crime of drive-by shooting as a reckless discharge of a firearm

> in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.

The statute does not define either "immediate" area or "scene" of discharge, but the Supreme Court of Washington has said that the statute was "aimed . . . at individuals who discharge firearms from or within close proximity of a vehicle" and has held that "[a] person discharging a firearm two blocks away from a vehicle cannot be said to be in close proximity to that vehicle." *State v. Rodgers*, 146 Wash. 2d 55, 62 (2002); *see also State v. Locklear*, 105 Wash. App. 555, 561 (2001) ("'immediate area' lacks a specific meaning in Washington law. Sometimes, it seems to mean a few feet or yards. Other times, it seems to mean many miles. As used in the context of RCW 9A.36.045, it seems to mean more the former than the latter.")

Here, there is a dispute about how far Netherton was from her car when she fired at Rants. The R&R notes that there was a "clear difference of opinion" about this distance expressed during Netherton's pretrial *Knapstad* challenge to the drive-by shooting charge. (Dkt. No. 42 at 49.) This is accurate, but the Court notes that the prosecution appeared to accept that the distance was well over one block, and certainly more than "a few feet or yards." (Dkt. No. 31, Ex. 65 at 148) ("We are talking about at best one block this way, and at best one block this way.")

The R&R also points out that the record "reflects the prosecutor subsequently agreed to

dismiss the charge, 'not because of constitutionality or the *Knapstad* motion,' but to streamline the case, avoid confusing the jury, and due to the question of any sentencing benefit should petitioner be convicted on both counts in light of a potential argument that it constituted the same criminal conduct." (Dkt. No. 42 at 49.) This is indeed the explanation for dropping the charge that was provided by the prosecution. (Dkt. No. 31, Ex. 66 at 168.) However, the Court notes that the prosecution chose to drop the charge only after the judge viewed a videotape demonstrating the distance at issue. It is at least plausible to suggest that the decision may have been motivated by concern that the judge would find that the distance was too far to fit into a reasonable understanding of "immediate area" as defined by case law. Moreover, the question of why the charge was dismissed is analytically distinct from the question of why it was brought in the first place. The prosecutor's explanation for dismissing the charge cannot, therefore, resolve the question of whether it was brought vindictively.

The Court concludes that there was sufficient probable cause to bring the drive-by shooting charge and finds no evidence in the record of vindictive prosecution. However, this is a matter upon which reasonable jurists may disagree. The Court therefore issues a COA permitting Netherton to appeal this issue.

O. **Objection 24[2]: Prosecutorial Misconduct**

Netherton objects to the R&R recommendation that the Court dismiss her claim of misconduct arising from the prosecution's claim to the jury that Netherton had sufficient ammunition to "take out" "three juries." Netherton raises no new arguments about this claim.

---

[2] This Objection is not numbered in Netherton's response to the R&R, but it is the final and twenty-fourth Objection.

ORDER
PAGE - 14

The Court agrees with the analysis about this issue in the R&R (Dkt. No. 42 at 54-57) and finds the objection unavailing.

## III. CONCLUSION

For the foregoing reasons, the Court ADOPTS the R&R (Dkt. No. 42) and DENIES Petitioner Lorraine Netherton's petition for writ of habeas corpus. (Dkt. No. 1). The Court ISSUES a COA for each of the following issues:

1) Whether Netherton should have been allowed to conduct discovery to determine whether the prosecution failed to disclose evidence impeaching Detective Gulla's credibility.

2) Whether Netherton should have been allowed to conduct discovery to determine what the prosecution or the Washington State Patrol knew about Mr. Thompson's work at the time of trial, and to determine whether there was an impermissible failure to disclose evidence impeaching Mr. Thompson's testimony and documenting potentially unreliable methodology.

3) Whether the failure to obtain photographs of Netherton's injuries constitutes ineffective assistance of counsel.

4) Whether there was vindictive prosecution involving the drive-by shooting charge that resulted in improper and prejudicial communication of the charge to the jury.

DATED this 19th day of December 2014.

//
//
//
//
//
//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

_____
John C. Coughenour
UNITED STATES DISTRICT JUDGE